FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NOV 0 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NUMBER: |
| ) | |
| *Plaintiff,* ) | **07 1952** |
| ) | |
| v. ) | |
| ) | |
| AT&T INC. and DOBSON ) | |
| COMMUNICATIONS CORPORATION, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

## PRESERVATION OF ASSETS STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

## I. DEFINITIONS

As used in this Preservation of Assets Stipulation and Order:

A. "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Wireless Business Divestiture Assets, the Minority Interests and the Cellular One Assets.

B. "AT&T" means defendant AT&T Inc., a Delaware corporation with its headquarters in San Antonio, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Cellular One" means Cellular One Properties, LLC, an Oklahoma limited liability company, with its headquarters in Oklahoma City, Oklahoma, engaged in the business of

licensing the Cellular One brand and promoting the Cellular One service mark and certain related trademarks, service marks and designs.

D.  "Cellular One Assets" means all legal and economic interests Dobson holds in Cellular One and shall include all right, title and interest in trademarks, trade names, service marks, service names, designs, and intellectual property, all license agreements for use of the Cellular One mark, technical information, computer software and related documentation, and all records relating to the divestiture assets.

E.  "CMA" means cellular market area which is used by the Federal Communications Commission ("FCC") to define cellular license areas and which consists of Metropolitan Statistical Areas ("MSAs") and Rural Service Areas ("RSAs").

F.  "Dobson" means defendant Dobson Communications Corporation, an Oklahoma corporation, with its headquarters in Oklahoma City, Oklahoma, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

G.  "Management Trust Assets" means the Wireless Business Divestiture Assets and the Cellular One Assets.

H.  "Minority Interests" means the equity interests and any management or control interests owned by any defendant in the following entities that are the licensees or operators of the mobile wireless telecommunications services businesses in the specified MSAs and RSAs:

(1)      Mid-Tex Cellular, Ltd., covering Texas RSA-9 (CMA 660); and

(2)      Northwest Missouri Cellular Limited Partnership, covering Missouri RSA-1 (CMA 504).

2

I. "Multi-line Business Customer" means a corporate or business customer that contracts with Dobson for mobile wireless telecommunications services to provide multiple telephones to its employees or members whose services are provided pursuant to a contract with the corporate or business customer.

J. "Transaction" means the Agreement and Plan of Merger among Dobson, AT&T and Alpine Merger Sub, Inc., dated June 29, 2007.

K. "Wireless Business Divestiture Assets" means each mobile wireless telecommunications services business to be divested under the proposed Final Judgment, including all types of assets, tangible and intangible, used by defendants in the operation of the mobile wireless telecommunications services businesses to be divested. "Wireless Business Divestiture Assets" shall be construed broadly to accomplish the complete divestiture of the entire business of Dobson in each of the following RSA license areas as required by the proposed Final Judgment and to ensure that the divested mobile wireless telecommunications services businesses remain viable, ongoing businesses:

      (1)  Kentucky RSA-6 (CMA 448);

      (2)  Kentucky RSA-8 (CMA 450); and

      (3)  Oklahoma RSA-5 (CMA 600)

provided that Dobson may retain all of the PCS spectrum it currently holds in each of these RSAs and equipment that is used only for wireless transmissions over this PCS spectrum.

The Wireless Business Divestiture Assets shall include, without limitation, all types of real and personal property, monies and financial instruments, equipment, inventory, office furniture, fixed assets and furnishings, supplies and materials, contracts, agreements, leases,

3

commitments, spectrum licenses issued by the FCC and all other licenses, permits and

authorizations, operational support systems, cell sites, network infrastructure, switches, customer

support and billing systems, interfaces with other service providers, business and customer

records and information, customer contracts, customer lists, credit records, accounts, and historic

and current business plans which relate primarily to the wireless businesses being divested, as

well as any patents, licenses, sub-licenses, trade secrets, know-how, drawings, blueprints,

designs, technical and quality specifications and protocols, quality assurance and control

procedures, manuals and other technical information defendant Dobson supplies to its own

employees, customers, suppliers, agents, or licensees, and trademarks, trade names and service

marks or other intellectual property, including all intellectual property rights under third-party

licenses that are capable of being transferred to an Acquirer either in their entirety, for assets

described in (a) below, or through a license obtained through or from Dobson, for assets

described in (b) below; provided that defendants shall only be required to divest Multi-line

Business Customer contracts if the primary business address for that customer is located within

any of the three license areas described herein.

The divestiture of the Wireless Business Divestiture Assets shall be accomplished by:

(a)     transferring to the Acquirers the complete ownership and/or other rights to

the assets (other than those assets used substantially in the operations of

Dobson's overall wireless telecommunications services business which

must be retained to continue the existing operations of the wireless

properties that defendants are not required to divest, and that either are not

capable of being divided between the divested wireless

4

telecommunications services businesses and those not divested, or are assets that the defendants and the Acquirer(s) agree, subject to the approval of the United States, shall not be divided); and

(b)    granting to the Acquirer(s) an option to obtain a nonexclusive, transferable license from defendants for a reasonable period, subject to the approval of the United States and at the election of an Acquirer, to use any of Dobson's retained assets under paragraph (a) above used in operating the mobile wireless telecommunications services businesses being divested, so as to enable the Acquirer to continue to operate the divested mobile wireless telecommunications services businesses without impairment. Defendants shall identify in a schedule submitted to the United States and filed with the Court as expeditiously as possible following the filing of the Complaint, and in any event prior to any divestiture and before the approval by the Court of the proposed Final Judgment, any and all intellectual property rights under third-party licenses that are used by the mobile wireless telecommunications services businesses being divested that defendants could not transfer to an Acquirer entirely or by license without third-party consent, the specific reasons why such consent is necessary, and how such consent would be obtained for each asset.

5

## II. OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure defendants' prompt divestiture of the Wireless Business Divestiture Assets, the Minority Interests and the Cellular One Assets for the purpose of preserving viable competitors in the provision of mobile wireless telecommunications services in order to remedy the effects that the United States alleges would otherwise result from AT&T's acquisition of Dobson.  This Preservation of Assets Stipulation and Order ensures, prior to such divestitures, that competition is maintained during the pendency of the ordered divestitures, and that the Management Trust Assets remain ongoing business concerns and the Management Trust Assets remain economically viable.  The Wireless Business Divestiture Assets, the Minority Interests and the Cellular One Assets will remain, as provided herein, preserved, independent and uninfluenced by defendants.

## III. JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action and each of the parties hereto, and venue of this action is proper in the United States District Court for the District of Columbia.  The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## IV. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.  The parties stipulate that a proposed Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust

Procedures and Penalties Act, 15 U.S.C. § 16, and without further notice to any party or other

proceedings, provided that the United States has not withdrawn its consent, which it may do at

any time before the entry of the proposed Final Judgment by serving notice thereof on defendants

and by filing that notice with the Court.

B.  Defendants shall abide by and comply with the provisions of the proposed Final

Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals

of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of

the signing of this Stipulation by the parties, comply with all the terms and provisions of the

proposed Final Judgment as though the same were in full force and effect as an order of the

Court.

C.  Defendants shall not consummate the Transaction sought to be enjoined by the

Complaint herein before the Court has signed this Preservation of Assets Stipulation and Order.

D.  This Stipulation shall apply with equal force and effect to any amended proposed

Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.  In the event (1) the United States has withdrawn its consent, as provided in Section

IV.A above, or (2) the proposed Final Judgment is not entered pursuant to this Stipulation, the

time has expired for all appeals of any Court ruling declining entry of the proposed Final

Judgment, and the Court has not otherwise ordered continued compliance with the terms and

provisions of the proposed Final Judgment, then the parties are released from all further

obligations under this Stipulation, and the making of this Stipulation shall be without prejudice

to any party in this or any other proceeding.

7

F. Defendants represent that the divestitures ordered in the proposed Final Judgment can and will be made, and that defendants will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V. MANAGEMENT TRUSTEE

A. The United States nominates W. Stephen Cannon as Management Trustee in this case, and defendants have no objection to his immediate appointment by this Court. Accordingly, this Court appoints W. Stephen Cannon as Management Trustee to serve as manager of the Management Trust Assets until the Management Trust Assets are sold to an Acquirer or transferred to a Divestiture Trustee pursuant to Section V of the proposed Final Judgment. Nothing in this Stipulation shall be interpreted to prevent the Management Trustee from becoming the Divestiture Trustee pursuant to Section V of the proposed Final Judgment.

B. Prior to the closing of the Transaction, defendants shall enter into a trust agreement with W. Stephen Cannon, subject to the approval of the United States in its sole discretion, that will grant the rights, powers, and authorities necessary to permit him to perform the duties and responsibilities of the Management Trustee pursuant to this Stipulation. The trust agreement shall enable him to assume all rights, powers, and authorities necessary to perform his duties and responsibilities, pursuant to this Stipulation and the proposed Final Judgment and consistent with their purposes. W. Stephen Cannon or any other subsequently appointed Management Trustee shall serve at the cost and expense of defendants, on such terms and conditions as the United States approves, with a fee arrangement that is reasonable in light of the person's experience and responsibilities.

C.  The Management Trustee will have the following powers and responsibilities with respect to the Management Trust Assets:

(1)  the Management Trustee will have the power to manage the Management Trust Assets in the ordinary course of business consistent with this Stipulation.  Only with the prior written approval of the United States, may the Management Trustee make any decision, take any action, or enter any transaction that is outside the ordinary course of business;

(2)  the Management Trustee shall have a duty, consistent with the terms of this Stipulation and the proposed Final Judgment, to monitor the organization of the Management Trust Assets; manage the Management Trust Assets in order to maximize their value so as to permit expeditious divestitures in a manner consistent with the proposed Final Judgment; maintain the independence of the Management Trust Assets from defendants; control and operate the Wireless Business Divestiture Assets to ensure that the Wireless Business Divestiture Assets remain an independent, ongoing, economically viable competitor to the other mobile wireless telecommunications services providers; manage the Cellular One Assets in a manner so as to maintain the business and value of the intellectual property including trademarks and service marks; and assure defendants' compliance with their obligations pursuant to this Stipulation and the proposed Final Judgment;

(3)  the Management Trustee shall have the authority to retain, at the cost and expense of defendants, such consultants, accountants, attorneys, and other representatives and assistants as are reasonably necessary to carry out the Management Trustee's duties and responsibilities;

9

(4) the Management Trustee and any consultants, accountants, attorneys, and any other persons retained by the Management Trustee, shall have full and complete access to all personnel, books, records, documents, and facilities of the Management Trust Assets or to any other relevant information as the Management Trustee may reasonably request, including, but not limited to, all documents and records kept in the normal course of business that relate to the Management Trust Assets.  Defendants shall develop such financial or other information as the Management Trustee may request and shall cooperate with the Management Trustee.  Defendants shall take no action to interfere with or impede the Management Trustee's ability to monitor defendants' compliance with this Stipulation and the proposed Final Judgment or otherwise to perform his duties and responsibilities consistent with the terms of this Stipulation and the proposed Final Judgment;

(5) the Management Trustee will ensure that the Management Trust Assets shall be staffed with sufficient employees to maintain their viability and competitiveness.  To the extent that any employee whose principal responsibilities relate to the Management Trust Assets leaves or has left the Management Trust Assets prior to divestiture of the Management Trust Assets, the Management Trustee may replace departing or departed employees with persons who have similar experience and expertise or determine not to replace such departing or departed employees; and

(6) thirty (30) days after the Management Trustee has been appointed by the Court, and thereafter on the 25th day of each month until the Management Trust Assets are either transferred to an Acquirer(s) or to the Divestiture Trustee, the Management Trustee shall report in writing to the United States concerning the efforts to accomplish the purposes of this

10

Stipulation and the proposed Final Judgment.  Included within that report shall be the

Management Trustee's assessment of the extent to which the Management Trust Assets are

meeting (or exceeding) their projected goals as are reflected in existing or revised operating

plans, budgets, projections or any other regularly prepared financial statements and the extent to

which defendants are fulfilling their responsibilities under this Stipulation and the proposed Final

Judgment.

      D.  The following limitations shall apply to the Management Trustee:

          (1)  the Management Trustee shall not be involved, in any way, in the operations

of the other businesses of defendants;

          (2)  the Management Trustee shall have no financial interests affected by

defendants' revenues, profits or profit margins, except that the Management Trustee's

compensation for managing the Management Trust Assets may include economic incentives

dependent on the financial performance of the Management Trust Assets provided that those

incentives are consistent with the objectives of this Stipulation and the proposed Final Judgment

and are approved by the United States; and

          (3)   the Management Trustee shall be prohibited from performing any further

work for defendants for one (1) year after the close of the divestiture transactions.

      E.  Defendants and the Management Trustee will take all reasonable efforts to preserve

the confidentiality of information that is material to the operation of either the Management Trust

Assets or defendants' businesses.  Defendants' personnel supplying services to the Management

Trust Assets pursuant to this Stipulation must retain and maintain the confidentiality of any and

all confidential information material to the Management Trust Assets.  Except as permitted by

11

this Stipulation and the proposed Final Judgment, such persons shall be prohibited from providing, discussing, exchanging, circulating or otherwise furnishing the confidential information of the Management Trust Assets to or with any person whose employment involves any of defendants' businesses, except as necessary to fulfill the purposes of this Stipulation and the proposed Final Judgment.

F.  If in the judgment of the Management Trustee, defendants fail to provide the services listed in Section VI of this Stipulation to the satisfaction of the Management Trustee, upon notification to defendants and approval by the United States, the Management Trustee may engage third parties unaffiliated with the defendants to provide those services for the Management Trust Assets, at the cost and expense of defendants, provided that defendants may have reasonable access to information to satisfy themselves that after the services have been provided, the Management Trust Assets are in compliance with all applicable laws, rules, and regulations.

G.  At the option of the Management Trustee, defendants may also provide other products and services on an arms-length basis, provided that the Management Trustee is not obligated to obtain any other product or service from defendants and may acquire any such products or services from third parties unaffiliated with defendants.

H.  If the Management Trustee ceases to act or fails to act diligently and consistently with the purposes of this Stipulation and the proposed Final Judgment, if the Management Trustee proposed by the United States is not approved by this Court or resigns, or if for any other reason the Management Trustee ceases to serve in his or her capacity as Management Trustee, the United States may select a substitute Management Trustee.  In this event, the United States will

12

identify to defendants the individual or entity it proposes to select as Management Trustee. Defendants must make any such objection to this selection within five (5) business days after the United States notifies defendants of the Management Trustee's selection. Upon application of the United States, the Court shall approve and appoint a substitute Management Trustee. Within five (5) business days of such appointment, defendants shall enter into a trust agreement with the Management Trustee subject to the approval of the United States in its sole discretion as described in Section V.B of this Stipulation.

## VI. <u>PRESERVATION OF ASSETS</u>

Until the divestitures required by the proposed Final Judgment have been accomplished, except as otherwise approved in advance in writing by the United States:

A. Defendants and the Management Trustee shall preserve, maintain, and continue to support the Management Trust Assets, take all steps necessary to manage the Management Trust Assets in order to maximize their revenue, profitability and viability and permit expeditious divestitures in a manner consistent with this Stipulation and the proposed Final Judgment.

B. The Wireless Business Divestiture Assets shall be operated by the Management Trustee as part of an independent, ongoing, economically viable and competitive business to other mobile wireless telecommunications services providers operating in the same license area and operated so that these assets are maintained or increased in value. The Cellular One Assets shall be managed by the Management Trustee so that the value of the Cellular One brand is maintained, all obligations under existing licensing agreements are fulfilled, and these assets are

13

maintained or increased in value. Defendants and the Management Trustee shall take all steps necessary to ensure that:

(1) the management, sales, and operations of the Management Trust Assets are independent from defendants' other operations; provided however, that at the request of the Management Trustee, defendants shall include the marketing, pricing and sales of the mobile wireless telecommunications services generated by the Wireless Business Divestiture Assets in the license areas served by the Wireless Business Divestiture Assets within its marketing, promotional, and service offerings, in the ordinary course of business, in any national, regional, and local marketing programs. Nothing in this Section shall prohibit the Management Trustee from independently developing reasonable marketing, sales, pricing or promotional offers for the mobile wireless telecommunications services generated by the Wireless Business Divestiture Assets, which shall be funded and supported by defendants;

(2) the Wireless Business Divestiture Assets are maintained by adhering to normal and planned repair, capital improvement, upgrade and maintenance schedules or at a greater level if necessary to insure that the Wireless Business Divestiture Assets remain competitive;

(3) the management of the Management Trust Assets will not be influenced by defendants;

(4) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning marketing, pricing or sales of mobile wireless telecommunications services or the Cellular One mark generated by the Management Trust Assets will be kept separate and apart from defendants' other operations; and

14

(5) the management of the Management Trust Assets acts to maintain and increase the sales and revenues of the Management Trust Assets, and maintain, at a minimum, at previously approved levels for 2006 or 2007, whichever are higher, all promotional, advertising, sales, marketing, and technical support for the Management Trust Assets.

C. Defendants shall provide sufficient working capital and lines and sources of credit as deemed necessary by the Management Trustee to continue to maintain the Management Trust Assets consistent with this Stipulation.

D. Defendants shall resolve all outstanding obligations related to the Management Trust Assets including agent and employee compensation within thirty (30) days of closing the Transaction.

E. Except (1) as recommended by the Management Trustee and approved by the United States, or (2) as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, defendants shall not remove, sell, lease, assign, transfer, pledge or otherwise dispose of any of the Wireless Business Divestiture Assets, the Cellular One Assets or the Minority Interests outside the ordinary course of business.

F. The Management Trustee, with defendants' cooperation consistent with this Stipulation and the proposed Final Judgment, shall maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Management Trust Assets. As part of the defendants' cooperation, at least five (5) days prior to the closing of the Transaction, defendants will provide to the Management Trustee and the United States, (1) for

15

each of the three (3) divestiture markets, a separate financial report for each divestiture market, and detailed management reports describing existing and future plans for human resources, marketing, network upgrades and capital expenditures in each divestiture market, and the extent to which each plan or project has been completed, and (2) a financial report for the Cellular One Assets. Defendants will produce these reports in a form and with content that is acceptable to the Management Trustee and the United States.

G. As part of the defendants' cooperation, at least five (5) days prior to the closing of the Transaction, defendants will provide all reports regularly prepared by defendant Dobson that measure sales activity in each of the three (3) Wireless Business Divestiture Assets divestiture markets that are in a form and with content acceptable to the Management Trustee and the United States. If the Transaction has not closed within seven (7) days after the filing of the Complaint, on that day defendants will submit to the United States and the Management Trustee current copies of these reports.

H. Defendants shall take no action that would jeopardize, delay, or impede the sale of the Wireless Business Divestiture Assets, the Minority Interests and the Cellular One Assets nor shall defendants take any action that would interfere with the ability of any Divestiture Trustee appointed pursuant to the proposed Final Judgment to operate and manage the Wireless Business Divestiture Assets, the Minority Interests and the Cellular One Assets or to complete the divestitures pursuant to the proposed Final Judgment to an Acquirer(s) acceptable to the United States. Until the Minority Interests have been divested or defendants have completely and fully withdrawn from the each of the Minority Interest entities, defendants will not exercise any legal, equitable, voting or any other rights it may have in the Minority Interest entities.

16

I.  Within seven (7) days of the filing of the Complaint or prior to the closing of the Transaction, whichever is sooner, defendants shall appoint (and notify the United States and the Management Trustee of their names and titles) sufficient employees for each of the Wireless Business Divestiture Assets and the Cellular One Assets, who are familiar with and have had responsibility for the management, operation, marketing, and sales of the Management Trust Assets, to assist the Management Trustee with his duties and responsibilities hereunder.

J.  Except for employees (1) whose primary employment responsibilities relate to the Management Trust Assets, or (2) who are involved in providing support services to the Management Trust Assets pursuant to Sections V and VI of this Stipulation and Section V of the proposed Final Judgment, defendants shall not permit any other of their employees, officers, or directors to be involved in the operations of the Management Trust Assets.

K.  Except as required by law in the course of (1) complying with this Stipulation and the proposed Final Judgment; (2) overseeing compliance with policies and standards concerning the safety, health, and environmental aspects of the operations of the Management Trust Assets and the integrity of their financial controls; (3) defending legal claims, investigations or enforcement actions threatened or brought against the Management Trust Assets; or (4) obtaining legal advice, defendants' employees (excluding employees (a) whose primary employment responsibilities relate to the Management Trust Assets, or (b) who are involved in providing support services to the Management Trust Assets pursuant to Sections V and VI of this Stipulation and Section V of the proposed Final Judgment) shall not receive, or have access to, or use any material confidential information, not in the public domain, of the Management Trust Assets.  Defendants may receive aggregate financial information relating to the Divestiture Assets to the extent

17

necessary to allow defendants to prepare the defendants' consolidated financial reports, tax returns, reports required by securities laws, and personnel reports. Any such information that is obtained pursuant to this subparagraph shall be used only for the purposes set forth in this subparagraph.

L. Defendants may offer a bonus or severance to employees whose primary employment responsibilities relate to the Management Trust Assets, that continue their employment until divestiture (in addition to any other bonus or severance to which the employees would otherwise be entitled).

M. Until the Management Trust Assets are divested to an Acquirer(s) acceptable to the United States, defendants shall provide to the Management Trust Assets, at no cost, support services needed to maintain the Management Trust Assets in the ordinary course of business, including but not limited to:

     (1) federal and state regulatory policy development and compliance;

     (2) human resources administrative services;

     (3) environmental, health and safety services, and developing corporate policies and insuring compliance with federal and state regulations and corporate policies;

     (4) preparation of tax returns;

     (5) financial accounting and reporting services;

     (6) audit services;

     (7) legal services;

     (8) routine network maintenance, repair, improvements, and upgrades;

(9)  switching, call completion, and other services necessary to allow subscribers to use mobile wireless services and complete calls;

(10)  billing, customer care and customer service related functions necessary to maintain the subscriber account and relationship;

(11)  for each retail and indirect sales outlet, a sixty (60) day supply of inventory, including both handsets and accessories, branded as directed by the Management Trustee, based on each outlet's average sales for the prior two (2) months, and if the Management Trustee requests, Dobson shall make available in sufficient quantities, branded as directed by the Management Trustee, handsets and accessories, introduced by Dobson in similar markets that are compatible with the network in the three (3) divestiture markets;

(12)  the individual financial reports described in Section VI.F shall be provided on a monthly basis; and

(13)  the sales reports described in Section VI.G shall be provided on a daily basis.

N.  Prior to the closing of the Transaction, defendants will notify the United States in writing of the steps defendants have taken to comply with this Section.  If the Transaction has not closed within seven (7) days after the filing of the Complaint, on that day defendants will submit to the United States and the Management Trustee a detailed statement of how defendants will comply with Section VI.A prior to the closing of the Transaction, including but not limited to: (1) marketing plans for the sale of mobile wireless telecommunications services by the mobile wireless businesses to be divested, including customer retention plans and promotions; (2) the designation of a management team who will have responsibility for and manage the Management

19

Trust Assets prior to the closing of the Transaction, identifying any changes from pre-filing staffing; (3) plans for retention of employees and payment of retention bonuses to employees whose primary duties related to the mobile wireless businesses and Cellular One Assets to be divested;  and (4) plans for network maintenance, repair improvements, and upgrades of the Wireless Business Divestiture Assets.

O.  This Preservation of Assets Stipulation and Order shall remain in effect until consummation of the divestitures required by the proposed Final Judgment or until further order of the Court.

Dated: October 29, 2007

Respectfully submitted,

FOR PLAINTIFF UNITED STATES

*Hillary B. Burchuk*

Hillary B. Burchuk (D.C. Bar No. 366755)
Lawrence M. Frankel (DC Bar No. 441532)
Rebekah P. Goodheart (DC Bar No. 472673)
Attorneys, Telecommunications & Media
Enforcement Section
Antitrust Division

U.S. Department of Justice
City Center Building
1401 H Street, N.W., Suite 8000
Washington, D.C.  20530
(202) 514-5621
Facsimile: (202) 514-6381

FOR DEFENDANT AT&T INC.

*Richard L. Rosen*

Richard L. Rosen (D.C. Bar No. 307231)
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C.  20004
(202) 942-5000
Facsimile: (202) 942-5999

FOR DEFENDANT DOBSON
COMMUNICATIONS CORPORATION

*John Roberti*

John Roberti (D.C. Bar No. 495718)
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C.  20006
(202) 263-3000
Facsimile: (202) 762-4228

O R D E R

IT IS SO ORDERED by the Court, this _____ 2nd _____ day of ___ November, 2007.

*Ellen S Huvelle*

United States District Judge